## Case No. 9,772.

### MOORE et al. v. NEWBURY.

[6 McLean, 472;[1] Newb. 49; 18 Law Rep. 50.]

Circuit Court, D. Michigan. June Term, 1855.

PAYMENT—EFFECT OF RECEIPT—PAYMENT BY NOTE.

1. A receipt of payment by a note is not conclusive, but only a prima facie evidence of payment.

2. A clerk invested with general authority to collect debts, presented a bill for supplies which were furnished on the credit of the vessel, and the debtor, not denying the claim, said that he was not then able to pay. On a subsequent application, the clerk expressed his willingness to take a negotiable note, if a certain third person would join in the note, and said he would then give the debtor the time desired, but if this were rejected, he should be compelled to attach the vessel. The note was given, and a receipt given of "payment by note." The note was endorsed by libellants, cashed the same day, and not being paid at maturity, returned to them, and was now produced in court and offered to be cancelled. Held, that the original debt was not extinguished, and that the lien on the vessel was not waived or abandoned.

[Cited in The Washington Irving, Case No. 17,244; The Dubuque, Id. 4,110; The Eclipse, Id. 4,268; The Helen M. Pierce, Id. 6,332.]

[2][This was a libel in rem for a balance alleged to be due on a bill of ship chandlery, furnished to the Fashion, during the spring of 1853, by Moore & Foote, merchants at Detroit. The only controversy was as to the amount due to the libelants. The balance claimed in the libel was $141.44. The answer of the claimant, who was the master and also the owner of the boat, alleged that only $13.53 remained unpaid; and that that amount, with costs, had been duly tendered to the libelants, and by them refused. From the allegations and admissions of the parties, and the proofs taken in the case, it appeared that a bill of the amount due to the libelants on the 22d of May, 1854, was presented for payment on two occasions, by George F. Bagley, a clerk of the libelants, to Henry L. Newberry, the owner of the Fashion, at Chicago, Illinois. Bagley intimated to Newberry, that unless payment was made, the boat would be attached. On the second occasion, Newberry wishing for further time, Bagley offered to take a negotiable note for the amount, to be signed by Newberry and some other person. This offer was acceded to by Newberry, who thereupon gave to Bagley the promissory note of himself and one J. R. Hugenins, for the amount claimed, payable in thirty days, to the order of the libelants. On receiving this note, Bagley delivered the bill which he

---

[1] [Reported by Hon. John McLean, Circuit Justice.]

[2] [From Newb. 49.]

had presented, to Newberry, after first writing at its foot as follows: "Chicago, May 22, 1854. Received payment, by H. L. Newberry & J. R. Hugenins' note, at 30 days. Moore & Foote, per Bagley." The note was delivered to the libelants, who subsequently procured it to be discounted at an exchange office on the strength of their indorsement. It was not paid at maturity, and the libelants were compelled to take it up. It still remaining unpaid, the libelants produced it in court to be canceled or surrendered to the makers. Bagley testified that he had general authority to collect the libelants' demand, but no special authority to waive their lien on the steamboat, or to take a note in payment of the account. The question made on the hearing of the cause was as to the effect of taking the note of Newberry and Hugenins on the libelants' demand.

[Mr. Walkers and Alfred Russell, for libelants.

[The taking of the note operated only as a suspension of proceedings on the libelants' demand, not as a satisfaction of the debt. Schermerhorn v. Loines, 7 Johns. 311; Stedman v. Gooch, 1 Esp. 4; 1 Cow. 306; Id. 359; 2 Metc. [Mass.] 76; 8 Pick. 522; 8 Johns. 304; [Peter v. Beverly] 10 Pet. [35 U. S.] 532; 3 Denio, 410; Franklin Ins. Co. v. Lord [Case No. 5,057]; The Chusan [Case No. 2,717]; North v. The Eagle [Id. 10,309].

[Mr. Hunt and John S. Newberry, for claimant.

[I. The giving of a negotiable note by a debtor to a creditor extinguishes the original debt. (1) To hold a contrary doctrine, in case like the one at bar, would give two separate rights of action, distinct in their nature, for one cause of action. The original creditor might sue the boat—the holders of the note sue the maker. (2) A contrary decision would give secret liens to a class of floating property, which might lie dormant and secret for years, until the note matured, and then be brought forward, to the great damage of innocent purchasers of a vessel.

[II. When new parties are taken on a note in payment of a debt, it then is an absolute discharge, unless a contrary agreement is proved.

[III. The assignment of a lien, or the claim of a material man, on a vessel, is an extinguishment of the lien, and once having been extinguished, it can never be revived. 6 Shep. [Me.] 249; 10 Shep. [Me.] 211; 1 Rich. Law, 111; [Sheehy v. Mandeville] 6 Cranch [10 U. S.] 264; 13 Vt. 456; 12 Johns. 410; 1 Hill. 516; 16 Vt. 30; 2 Metc. [Mass.] 173; 18 Pick. 360; 21 Pick. 230; 24 Pick. 13; 1 Day, 510; Weed v. Snow [Case No. 17,347]; 14 Wend. 116; 7 Barr, 394; 4 Ga. 185; 1 Smith, Lead. Cas. 393 et seq.; 10 Barb. 372; 1 How. (Miss.) 144.][2]

---

[2] [From Newb. 49.]

WILKINS, District Judge. The clerk of the libellants, invested with a general authority to collect debts, presented a bill for the amount claimed, to the respondent, on the 22d of May last, 1854, and demanded payment. The respondent, not denying the accuracy of the account, stated that he was not able at the time to make payment. At a subsequent interview, the clerk renewed his application, expressed his willingness to take a negotiable note for the amount, if a certain individual, whom he named, would join in the same, and that then he would extend to the respondent the time desired, but that if this proposition was rejected, he would be compelled to attach the vessel. The note indicated was procured by the respondent, received by the clerk, and the account adjusted by a receipt, given in this language: "Received payment by note. Moore & Foote, by G. F. Bagley, Clerk." This note, being endorsed by the libellants, was, on the same day, cashed at a broker's office, and not being paid at maturity, was returned to them; it is now exhibited in court, and offered to be cancelled. This libel is exhibited on the original account. The answer alleges payment, and denies the existence of the maritime lien. Such being the facts, two questions are presented: 1st. Was the original debt extinguished by the note? If not, 2dly. Does the transaction show an abandonment or waiver of the lien?

The circuit court for the United States, for this district, in Allen v. King [Case No. 226], and in Weed v. Snow [supra], has settled the law for this court, namely, that a receipt of payment by note is not conclusive, but only prima facie evidence of the payment of the debt, and that such evidence may always be explained by other extraneous circumstances, showing the intention of the parties when the receipt was given, and that there was in fact no actual payment of the debt. This renders unnecessary the consideration of the conflicting decisions in other states. This court will follow the rulings of the circuit, as long as they are unreversed by the supreme court of the United States. Most of the cases cited were considered in Allen v. King [supra], and there is nothing in this receipt which takes it out of the ruling in that case. Here there is no proof of an agreement that the note should discharge the pre-existing debt, and no proof that it should not so operate. Our judgment must rest on the intention, as manifested by the conversation and conduct of the parties at the time. The receipt, unexplained, as in De Graff v. Moffat [Case No. 3,748], cited by the respondent's proctor, would have been conclusive. The proofs exhibit these facts: The master was not able or not willing to pay when the account was first presented. He did not contest the sum due. But he wanted time as a convenience to himself. The agent or clerk was willing to give time on certain conditions. With this spirit of accommodation the note

in question was procured and received. The statement of the clerk, that unless the proposed arrangement was acceded to, the vessel should at once be attached, can, by no fair principle of construction, be held to signify his design to receive the note as absolute payment, and an extinguishment of the debt. Moreover, it appears that the agent was only authorized to collect debts. He had no power to exchange securities, especially a higher for one of less grade,—a security in rem for one merely in personam. Such power is not necessarily implied in a simple agency to collect. And certainly the cashing of the note by the broker was solely on the strength of the contract of endorsement. Had the intrinsic credit of the drawers been sufficient, the face of the obligation would have been otherwise.

Holding, therefore, that the note, independently, was not a satisfaction of the debt, the only question remaining is,—was the lien abandoned by the libellants' receiving the note, and thus recognizing the act of the clerk? It is to be observed that, as the transaction took place in Chicago, the libellants did not, in fact, receive the note, but only the money raised by its discount, when it was too late for them to disavow or repudiate the transaction. Where materials are furnished a vessel, the credit is given either to the owner, the captain, or to the ship, and the law creates the lien on the latter. Such lien, however, may be waived, either at the time the materials are furnished, or be abandoned by a subsequent agreement, expressed or implied, on the part of the creditor. He may, at his option, look to other security, and if so, no lien attaches to the ship. In the case of De Graff v. Moffat [supra], so confidently relied upon, the contract, at the time it was entered into by the parties, embraced a credit by the notes of the respondent. After the libellant had closed his proofs, the respondent introduced in evidence a settlement between the parties—an account current in the handwriting of the libellant—in which sundry promissory notes were credited and admitted as cash. This account was balanced, and for the sum remaining due, a receipt in full was given, being expressed at the foot of the account as a payment by note, which was not produced or offered for cancellation. No evidence was introduced showing any understanding modifying or contradicting this receipt, and it was, of course, held, as in Allen v. King [supra], prima facie evidence of payment. Besides, the original agreement, as shown by the account, certainly waived all lien upon the vessel. Although a note under certain circumstances will not operate as an extinguishment of the debt, yet, when the creditor accompanies the act of receiving it in payment with the manifest intention to take it as his sole security, and not to look to the ship, such intention clearly expressed or certainly implied, operates as the abandonment of the lien which the law gave him.

Such an intention was not manifested in this case. There was no understanding to release the vessel. It is true that she was not yet attached by process; and it is true that the clerk threatened it; but it is alike true that, at that interview between the clerk and the respondent, all the latter wanted was further time to pay the debt. The former wanted the money due; and under these circumstances the note was given and taken.

But if the note was not taken with the understanding that it was absolute payment, can it be inferred that it was received as additional security? If it was, it would not help the respondent's defense. He pleads payment, and relies upon a change of securities. The note was not a higher security than the ship. Why, then, collateral, or why a change? There can be but one answer. The note was received to raise the money at the time for the mutual accommodation of the clerk and the respondent, by placing the former in possession of funds which he then needed, and extended to the latter further time to meet an acknowledged obligation then due. This intention of the parties is too obvious to be disregarded or overlooked. The one did not receive the note in discharge of the lien; the other did not give it with such an understanding. The intention must govern. The note was to be payment, if paid at maturity; if unpaid, all the relations of the parties as to the vessel and the debt, remained unchanged. The circumstance, so ingeniously pressed, that the note was cashed, and the libellants thereby received the amount of the lien, (which then ceased and could not be revived,) does not materially vary the transaction, or exhibit a different intention. The note gave thirty days' time to the respondent. Until that time elapsed, the vessel could not be attached. Why? Certainly not because the debt was paid, or the lien waived, but because the note and its discount evidenced an understanding to await its maturity, and the default of the makers to meet it. It was in proof that the note was discounted on the endorsement of the libellants. That it was never paid by the respondents, but by the former, fully appears by their present possession. The witness stated that the note was returned by the endorsees, who had cashed it in May last, and that the libellants were charged with the amount in their account current with the broker. In other words, the note, when due, was lifted by the libellants. In cases of this description, the material man is not to be deprived of any of his remedies, except upon the most conclusive proof that exclusive credit has been given to other security than the owner, the master, or the ship. Looking to either of the former, to the exclusion of the latter, releases the lien, but must be clearly established. In no case will either be released, unless such was the manifest intention of the party. The maritime law guards, with

most scrupulous care, its various subjects. The material man, the furnisher of supplies, and the mariner are equally protected. That credit was originally extended to the vessel in this case, is not questioned. The schedule appended to the answer, reads: "Steam Boat Fashion, to Moore & Foote, Dr. To merchandise rendered on account." To this the receipt is attached upon which the defense is based. So that the lien was in existence and recognized the day the note was given. There is no proof that it was ever waived— no proof of an intention to waive it.

The court was forcibly impressed during the hearing with the fact that the instrument was negotiable, and had been discounted, and that, therefore, as the libellants had received the money, their relation to the vessel had ceased. But the subsequent production of the note, and its tender for cancellation, removed all difficulty as to sustaining the lien. This note is not now outstanding. No innocent endorsee can be affected by the decree, nor can it be discovered how sustaining the libel on the principle stated will peril vessels hereafter by secret liens. The purchaser of a ship or any vessel afloat, purchases with a presumed knowledge of the existing legal responsibilities. The note and the lien cannot both be sustained. While the one is still current as cash, or outstanding, the other is without force or vitality; but if the former is itself dead and as waste paper, the legal existence of the latter is not impaired. Here the ship contracted the debt. That debt never has been paid. The note was but a promise to pay—a broken promise. It was made and accepted with the sole view to an extension of time. Certainly in this tribunal, as a court of equity, the respondent cannot complain of being dealt with inequitably by a decree enforcing payment of the debt of the boat from the boat; a debt not denied either in its character or amount. Decree for the entire claim and costs, and the cancellation of the note on payment of the decree.